```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
In the Matter of the Arbitration      :
Between:                              :    09 Civ. 1289 (JSR)
                                      :
TIG INSURANCE COMPANY,                :    MEMORANDUM ORDER
                                      :
        Petitioner/Cross-Respondent,  :
                                      :
             -v-                      :
                                      :
GLOBAL INTERNATIONAL REINSURANCE      :
COMPANY, LTD.,                        :
                                      :
        Respondent/Cross-Petitioner.  :
                                      :
------------------------------------- X
```

JED S. RAKOFF, U.S.D.J.

Because an arbitrator is not required to proceed in formal fashion or to give reasons for his rulings, his decisions may often appear arbitrary, especially to the non-prevailing party. But having chosen to forego the procedural punctiliousness and reviewable reasoning of a court of law, the loser is hard-pressed to complain if there is even a colorable justification for the result. Here, the losing party got all that it bargained for when it elected arbitration.

Global International Reinsurance Company, Ltd. ("Global") and TIG Insurance Company ("TIG") are parties to a reinsurance agreement pursuant to which Global agreed to indemnify TIG for certain losses. In a previous Order dated October 30, 2008, the Court confirmed an arbitrator's award granting TIG's motion for partial summary judgment on the basis that Global had entered into a settlement agreement that released its right to audit and dispute TIG's claims for certain of

those losses. Global then asserted before the arbitrator that TIG had fraudulently induced it to enter into that release and settlement agreement, or, alternatively, that TIG had allocated the disputed claims in bad faith; but the arbitrator, in a one-sentence order, rejected those assertions as well. Global now petitions this Court to vacate the arbitration award pursuant to sections 10(a)(3) and 10(a)(4) of the Federal Arbitration Act, and TIG cross-petitions to confirm the award.

By way of background, Global agreed to reinsure TIG for certain losses pursuant to a Loss Reserve Reinsurance Agreement (the "LPT Agreement") with an aggregate limit of $315 million. Declaration of Christopher Paul Anton ("Anton Decl.") Ex. 20, Tab R, Art. V. A sublimit, which has been exhausted, capped Global's exposure for certain losses at $25 million. Id. Art. XII. In 1999, the parties disputed the scope of the sublimit, and on September 23, 2002 an arbitration panel agreed with TIG's interpretation. Id. Ex. 20, Tab A.

In accordance with that decision, TIG undertook to have its auditor, Buxbaum Loggia & Associates ("Buxbaum"), perform an audit (the "Buxbaum Audit") to ensure that claims were properly coded in accordance with the arbitration panels' ruling. Anton Decl. Ex. 20, Tab V. In connection with that audit, TIG prepared a written protocol that set forth the procedure for allocating losses. Id. The protocol expressly noted that there was at least some subjectivity involved in both the original underwriters' assignment

2

of premium codes and in the claims coders' assignment of codes. See, e.g., id. at 10 (identifying "[o]ne additional area in which a claims coder would have had the opportunity to make a choice that would affect the [code] ultimately assigned to the claim . . ."). TIG forwarded the protocol to Global, and solicited "any comment that [Global] may have regarding the methodology that TIG intends to employ in creating and verifying accuracy" of the proposed audit. Id. Global did not provide any comments, objections, or feedback on the protocol. TIG represented to Global and the arbitration panel that the Buxbaum Audit was "exhaustive" and based on a "carefully developed methodology" for "ensuring that the claims were properly coded." Id. Ex. 1 at 1-2.

The results of the Buxbaum Audit, which TIG provided to Global in February 2003, showed, inter alia, that out of 1,118 audited claims valued at approximately $130 million, 162 claims with an incurred value of approximately $14 million had been miscoded as falling outside of the sublimit and 48 claims with an incurred value of approximately $7 million had been miscoded as falling inside the sublimit. Id. Ex. 20, Tab Q. TIG represented to Global that the Buxbaum Audit was accurate and that TIG had corrected the identified coding errors. Id. Ex. 13 ¶ 5. In March 2003, TIG forwarded to Global a Fourth Quarter 2002 Loss Report, which incorporated the results of the audit. Declaration of Sean Thomas Keely ("Keely Decl.") Ex. A at Ex. 4. Although the prior order of the arbitration panel required Global to object to any quarterly report within seven

3

days, Anton Decl. Ex. 6, Global never objected to or reserved its rights with respect to the Fourth Quarter 2002 Loss Report.

On May 13, 2004, the parties entered into a Settlement Agreement that dismissed with prejudice all claims raised but not resolved in the parties' ongoing arbitration proceedings and incorporated the arbitration panel's September 23, 2002 interpretation of the sublimit. Id. Ex. 20, Tab B. Paragraph 14 of the Settlement Agreement required TIG to audit a statistically representative sample of Global's claim to ensure that those claims were coded in a manner consistent with the September 23, 2002 Order. Id. Ex. 20, Tab B at ¶ 14. The Settlement Agreement also provided that, in any subsequent arbitration proceeding (including the one underlying this action), "[t]he arbitrator shall be relieved of all judicial formality and shall not be bound by the strict rules of law." Id. ¶ 21.

Later in 2004, Global sought to amend the Settlement Agreement to permit Global to review the allocation of pre-2003 losses, together with additional losses reported between January 1, 2003 and March 15, 2004 that had not previously been reviewed as part of the first audit. Id. Ex. 20, Tab E. On July 28, 2004, David Thirkill of TIG informed Manjo Karnani of Global by e-mail that the Settlement Agreement had foreclosed Global's right to audit pre-2003 claims. See id. ("We had a deal. Whatever the words say, that deal was to draw a line in the sand and to move forward"). On July 29, 2004, Mr. Thirkill sent another e-mail to Mr. Karnani that served "as a clarification of Section 14 (audit scope) of the Settlement Agreement," noting that, with certain exceptions, "[n]o other claim

4

reported to TIG prior to 12/31/02 shall be subject to review in any future audit." Id. Ex. 20, Tab C. Global agreed. Id.

In March 2005, TIG conducted the audit required by the Settlement Agreement. Id. Ex. 20, Tab O ¶¶ 9-10. Approximately 33% of the 64 claims reviewed were miscoded or lacked sufficient information to verify the coding. Id. ¶¶ 13-14. Global thereafter retained Edward McKinnon of Claims Resource Management, Inc. to conduct an independent inspection of TIG's records pursuant to paragraph 11 of the Settlement Agreement. Id. Ex. 20, Tab O ¶ 19. McKinnon determined that 222 of 494 claims reviewing during its audit were miscoded, amounting to approximately $18 million that should have been subject to the sublimit. Id. Ex. 14, ¶¶ 2, 7, 10. McKinnon noted that 62 of these miscoded claims were previously audited by Buxbaum, which "either failed to recognize that TIG had miscoded the claims or erroneously determined that the claims should be recoded." Id. Ex. 14, ¶ 19(e).

In October 2007, Global served a demand for arbitration on TIG, alleging, inter alia, that TIG had miscoded and misallocated the pre-2003 claims in bad faith and that it had fraudulently concealed its coding and allocation errors in order to induce Global to enter into the Settlement Agreement. Id. Ex. 2. On October 28, 2008, TIG moved in the arbitration proceedings for summary judgment on Global's fraud and bad faith claims. The parties fully briefed the issues, TIG submitted 35 exhibits in support of its motion, and Global submitted 3 declarations and 23 exhibits in response. See id. Ex. 20, Keely Decl. Exs. A and B. The arbitrator heard oral argument on December

5

16, 2008, and on December 30, 2008, the arbitrator granted TIG's motion and dismissed Global's fraud and bad faith claims. Id. Ex. 19. Global's petition to vacate the arbitrator's award then followed.

An arbitrator's decision is entitled to "great deference," and Global thus "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law" that warrant vacatur. Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). Indeed, as a general matter, this Court is required to enforce the arbitration award as long as there is a "barely colorable justification for the outcome reached." Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003)(citation and quotation omitted); see Reliastar Life Ins. Co. of New York v. EMC Nat'l Life Co., 564 F.3d 81, 86 (2d Cir. 2009) ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court's conviction that the arbitrator has "committed serious error" in resolving the disputed issue "does not suffice to overturn his decision") (citations and quotations omitted); see also White v. Local 46 Metallic Lathers Union and Reinforcing Iron Workers of New York City, 01 Civ. 8277, 2003 WL 470337, at *5 (S.D.N.Y. Feb. 24, 2007) ("mistakes of fact, errors of law, inadequate reasoning or even arbitrary determinations" do not constitute grounds for vacating an arbitration award).

The specific provisions under which Global here seeks vacatur are no less demanding. In particular, section 10(a)(3) of the

6

Federal Arbitration Act authorizes vacatur of an arbitration award only in cases "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Although arbitrators "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument," there is no requirement that they follow the Federal Rules of Civil Procedure or the Federal Rules of Evidence, and vacatur under this section is warranted only in those rare circumstances where the arbitrator's conduct "amounts to fundamental unfairness." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20-21 (2d Cir. 1997). Moreover, Global must demonstrate that the error complained of "was made in bad faith or was so gross as to amount to affirmative misconduct." Local 530 v. District Council No. 9, 99 Civ. 2703, 1999 WL 1006266, at *2 (S.D.N.Y. Nov. 5, 1999) (citations and quotations omitted).

In arguing that it meets these exacting standards, Global contends that the arbitrator in granting summary judgment improperly resolved factual issues without a fully developed factual record and without the benefit of discovery and witness testimony. Arbitrators, however, have "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings," Supreme Oil Co., Inc. v. Abondolo, Nos. 07 Civ. 6479, 7537, 2008 WL 2925300, at *4 (S.D.N.Y. July 31, 2008), and thus may proceed "with only a summary hearing and with restricted inquiry into factual issues." AT&T Corp. v. Tyco Telcoms (U.S.) Inc., 255 F.

7

Supp. 2d 294, 303 (S.D.N.Y. 2003); <u>Areca, Inc. v. Oppenheimer & Co.</u>, 960 F. Supp. 52, 55 (S.D.N.Y. 1997). It may also be noted that here the Settlement Agreement itself explicitly provided that the arbitrator "shall be relieved of all judicial formality and shall not be bound by the strict rules of law." Anton Decl. Ex. 20, Tab B, ¶ 21.

It is undisputed, moreover, that after TGI had submitted 35 exhibits in support of its motion for summary judgment, Global was given an unrestricted opportunity to respond, which it did by submitting 23 exhibits, three sworn declarations, and substantial written briefing. The arbitrator also heard extensive oral argument from the parties before rendering a decision. <u>See</u> Anton Decl. Ex. 17. This was thus far from a fundamentally unfair hearing.

Global also argues that the arbitrator had before him various items of evidence that purportedly raised genuine issues of material fact, precluding summary judgment. Despite Global's attempt to portray this as a deprivation of a fair hearing or as a manifest disregard of the law, it really amounts to a claim that the arbitrator ignored relevant evidence. Such arguments must fail, because the law "does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." <u>Wallace v. Buttar</u>, 378 F.3d 182, 193 (2d Cir. 2004) (citation and quotation omitted).

Finally, Global argues that the arbitrator, in holding that the release of the pre-2003 claims in the Settlement Agreement barred Global's claim that the Settlement Agreement was fraudulently

8

obtained, manifestly disregarded the law that a fraudulently obtained contract is void. Global Mem. at 22. However, the judicially-created doctrine of manifest disregard of the law -- to the extent it still exists, see Stolt-Nielsen v. Animalfeeds Int'l, 548 F.3d 85, 93 (2d Cir. 2008), cert. granted, 129 S. Ct. 2793 (2009) -- is confined to "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Duferco Int'l Steel Trading, 333 F.3d at 389. Here, in a situation where Global was unquestionably aware of prior miscodings and misallocations on TIG's part, one can reasonably assume that the arbitrator, in granting judgment summarily, applied the well-established doctrine of applicable New York law that a claim for fraudulent inducement will not lie where the allegedly defrauded party is on notice from prior disclosures of the likely existence of the allegedly concealed information on which the claim of fraudulent inducement is based. See, e.g., Lumber Indus., Inc. v. Woodlawn Furniture Corp., 26 A.D.2d 924, 924-25 (1st Dep't 1966); see also, e.g., Kirkwood v. Nakhamkin, 169 A.D.2d 693 (1st Dep't 1991). Thus, there is no basis for asserting manifest disregard of the law.

Accordingly, for all of the foregoing reasons, the Court hereby grants TIG's petition to confirm the award and denies Global's petition to vacate the award. The Clerk of the Court is directed to enter final judgment.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          August 7, 2009